UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CARL BARTON,

                                        Petitioner,

            - v -                                                    9:03-CV-1377
                                                                        (J. Hurd)
GARY FILLION,

                                        Respondent.


CARL BARTON
01-A-0037
Petitioner Pro Se
Mt. McGregor Correctional Facility [1]
1000 Mt. McGregor Road
Wilton, New York 12831

STEVEN H. SCHWARTZ, Asst. Attorney General
Attorney for Respondent

GUSTAVE J. DI BIANCO, Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

This matter has been referred to me for a Report and Recommendation by the

Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636

---

[1]The Court notes that all litigants have an ongoing obligation to keep the Court informed of any change of address which may occur during the pendency of an action. N.D.N.Y.L.R. 10.1(b)(2). Notification of a change of address is essential to the orderly disposition of cases and failure to notify the court of a change in address may be a basis for dismissal. N.D.N.Y.L.R. 41.2(b); *Dansby v. Albany County Corr. Facility*, 1996 WL 172699, at *1 (N.D.N.Y. Apr. 10, 1996); *Jackson v. Rabideau*, 2007 WL 911846, at *2 (N.D.N.Y. Mar. 22, 2007).

Here, Petitioner has failed to update his address as required to by Northern District Local Rule 10.1(b)(2), even though he was previously warned that he has a duty to do so. (Dkt. No. 4). A search of the Inmate Information Database maintained by the New York State Department of Correctional Services ("DOCS"), shows that Petitioner is currently housed at the Mt. McGregor Correctional Facility, whereas the docket sheet still contains a Coxsackie Correctional Facility address. *See* DOCS Inmate Population Information Search website *at* http://nysdocslookup.docs. state.ny.us/GCA00P00/WIQ1/WINQ000 (last visited June 28, 2007). It is *not* the responsibility of the court to locate parties who do not maintain current addresses with the court. Although this court will address this petition on the merits, and send the Report-Recommendation to Petitioner's new address, the court will not continue to do so. Petitioner is advised that he must *immediately file a change of address, and he must continue to submit any address changes to the court as long as his action is pending*.

and N.D.N.Y.L.R. 72.

Petitioner brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner complains of a judgment of conviction in the Albany County Court on March 23, 2000, after a jury found Petitioner guilty of Attempted Rape, First Degree and Assault, Second Degree. Petitioner was sentenced to a term of fifteen years imprisonment. Prior to sentencing, Petitioner moved to set aside the verdict pursuant to N.Y. CRIM. PROC. LAW § 330.30(1). After a lengthy hearing, the trial judge denied Petitioner's motion on December 21, 2000.

On January 9, 2003, the Appellate Division, Third Department, affirmed Petitioner's conviction. *People v. Barton*, 301 A.D.2d 747, 752 N.Y.S.2d 174 (3d Dep't 2003). Leave to appeal to the New York State Court of Appeals was denied on March 31, 2003. *People v. Barton,* 99 N.Y.2d 625, 760 N.Y.S.2d 106, 790 N.E.2d 280 (2003). Reconsideration was denied on November 7, 2003. *People v. Barton,* 1 N.Y.3d 539, 775 N.Y.S.2d 244, 807 N.E.2d 294 (2003). Petitioner also filed a petition for a writ of *coram nobis*, alleging ineffective assistance of appellate counsel, which was denied by the Appellate Division, Third Department, on August 22, 2003. *See* Resp't Mem. of Law at p. 1. The New York Court of Appeals denied leave to appeal the denial of the coram nobis application on November 7, 2003.

Petitioner raises four claims in his habeas petition:

1.   The trial court erred in its jury instruction regarding identification and defense counsel's failure to move to suppress "clearly" impermissible identification testimony "constituted reversible error." Petition at pp. 2-4. (Dkt. No. 1).

2.      Petitioner's oral statements were improperly admitted into evidence. Petition at p.5.

3.      The trial court's *Sandoval* ruling was "unduly expansive." Petition at p.6.

4.      Petitioner was denied effective assistance of appellate counsel. Petition at p.7.

Respondent has filed a memorandum of law, together with the pertinent state court records.[2]  Petitioner filed a traverse/memorandum of law in support of the petition. (Dkt. No. 11).  For the following reasons, this court will recommended that the petition be denied and dismissed.

## DISCUSSION

**1.    Facts**

Petitioner's conviction in this case resulted from the assault and attempted rape of Shaoying Ma while she was delivering Chinese food in Albany, New York. Petitioner was indicted for Attempted Rape, First Degree and Assault, Second Degree. The trial judge conducted a suppression and a *Sandoval*[3] hearing.  The court denied the motion to suppress Petitioner's oral and written statements, finding that there was probable cause for Petitioner's arrest; he was properly given *Miranda*[4] warnings; and he spoke to the police voluntarily.  Record on Appeal (RA) at 141.  However, the court precluded identification testimony from the victim and a neighbor due to the prosecution's failure to comply with the required notice of intent to use their testimony

---

[2]State Court records are listed on pages 2 and 3 of respondent's answer.  (Dkt. No. 7).

[3] *People v. Sandoval*, 34 N.Y.2d 371, 374 (1974).

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

at trial under N.Y. CRIM. PROC. LAW § 710.30. (RA. 141-43).  After the *Sandoval*

hearing, the trial judge precluded the use of certain convictions and other bad acts

because they were too "remote,"[5] but held that evidence of the more recent convictions

would be admissible if Petitioner took the stand. (RA. 143-60).  Petitioner did not

testify at the trial.

The victim, Shaoying Ma had two sisters, Shaoli and Shaohua.  All three sisters

testified at trial with the assistance of a Chinese interpreter. *See e.g.* RA at 297.  Shaoli

Ma stated that her husband owned the "Madison Wok," a Chinese restaurant in Albany,

New York. (RA at 298).  Shaoli, Shaohua, and Shaoying all worked in the restaurant.

*Id.*  On the evening of November 15, 1998, Shaohua was taking orders over the

telephone, and Shaoying was making deliveries. (RA at 300, 363).  A delivery order

was received at 5:30 p.m. (RA. at 297-300 & 363-65).  Shaoying Ma testified that she

took the order  and went out to make the delivery.  Upon arriving, she encountered

Petitioner at the door. (RA. at 364-68).  Ma showed Petitioner the menu and asked

Petitioner if she was at the correct address. (RA at 368-69).  Petitioner told Ma that the

address was correct and that she should knock on the door. (RA at 369).

Ma knocked on the door, and when nobody answered, Petitioner told her that

someone was calling her from the back of the building. (RA. at 368-69).  Petitioner led

Ma to the back door, and he knocked on the door, but there was no answer. (RA. at

370-71).  Ma stated that Petitioner told her there was definitely someone in the house,

so Ma knocked again, but got tired of knocking and decided to leave. (RA at 371).

---

[5] Petitioner had a lengthy criminal record.

Shaoying Ma stated that Petitioner told her that the person who placed the order was his friend, and that Petitioner would pay for the food. (RA. at 371). Ma testified that Petitioner reached into his pocket. (RA at 371). Ma thought that Petitioner was reaching for some money, but instead, he grabbed her arm and pulled out a piece of broken glass from his pocket. (RA. at 371-72). Ma then stated that Petitioner placed the glass near her throat and told her not to scream, stating he would kill her if she did. (RA at 373). He told her that he just wanted to have sex with her, "nothing more." (RA. at 372-73).

Ma attempted to escape and began screaming at which time Petitioner cut her neck with the piece of glass. (RA. at 373-74). Ma stated that Petitioner then dragged her down onto the grass and tried to remove her pants. (RA. at 374). Ma was five feet tall and weighed ninety four pounds, so Petitioner overpowered her. (RA at 375). Petitioner had loosened one of the buttons on Ma's pants when Ma asked him to let her "do it [herself]." (RA at 375). Ma used this opportunity to stand up and tried to run away, but Petitioner grabbed her arms and her hair and began to beat her. (RA. at 375-76). Petitioner pushed Ma up against an iron fence and continued to hit her in the head. (RA at 376-77).

Ma testified that Petitioner had beaten her so much that she told Petitioner to "just . . . do it . . . ." (RA at 377). Ma stated that she then noticed that Petitioner had pulled down his pants, and she then pretended to cooperate with him, but instead she kicked him in the groin. (RA at 377). Initially, this attempt to escape did not work, because Ma testified that he continued to beat her after she tried to kick him. (RA at

377-78).  However, ultimately she had the opportunity to run away. (RA. at 378).  Ma ran back to the restaurant, and one of her sisters called the police.  (RA. at 382-83). The police accompanied Ma and one of her sisters back to the scene.  They found the menu and eye-glasses that Ma lost during the struggle.  The police also spoke to some individuals living in the apartment building. (RA. at 383-84).  Ma also gave the police a description of the suspect.  (RA. at 385).

Shaoying Ma stated she gave the same description of her attacker to her older sister, Shaohua.[6] (RA. at 390).  Shaohua testified that she remembered a man fitting that description coming into the restaurant approximately a month prior to the incident and identified that person at trial as Petitioner. (RA. at 320-25).  Shaohua stated that, on November 18, 1998, she observed Petitioner walking in front of their restaurant. (RA. at 327-28).  At that time, Shaoli called the police.[7]  (RA at 308-09).  Shaohua testified that when the police officer arrived at the restaurant, she took him to where petitioner had gone. (RA at 328).

Officer Kevin Moynihan responded to the call at the Madison Wok. (RA at 349). Officer Moynihan testified that he met "one of the women" from the Madison Wok, and that she directed him to the "Sadie Klutz" bar and pointed to Petitioner through the glass in the doorway. (RA. at 349-51).  Officer Moynihan entered the bar and asked Petitioner to step outside because it was a little loud in the bar. (RA. at 351-52).

---

[6] Shaohua also testified that Shaoying described her attacker to Shaohua. (RA at 319-20).

[7] Shaoli testified that although she was not at the Madison Wok when Petitioner walked by, Shaohua called her from the Madison Wok and asked Shaoli to call the police because Shaoli's English was better than that of her other two sisters. (RA at 308).

Officer Moynihan stated that Petitioner asked if Moynihan was there regarding "the attack on the girl the other night." (RA. at 351). Officer Moynihan stated that he told Petitioner that the police were "trying to sort that out," and asked Petitioner to go back and wait in the bar. (RA at 352). Some other officers arrived, including Officer Moynihan's supervisor, Sergeant Carnevali. (RA at 352). Petitioner subsequently went to the police station voluntarily with Officer Moynihan and Detective Kenneth Kennedy. (RA. at 352-53).

Detective Kennedy testified that he questioned Petitioner at the police station, confronting Petitioner with some information that Detective Kennedy had discovered. (RA at 452). When Petitioner heard the information that Detective Kennedy had discovered, Petitioner admitted that *he* had ordered the Chinese food from Madison Wok because he was hungry. (RA at 452). Petitioner admitted that he knocked Ma down because he intended to steal the food, but Petitioner denied trying to rape her. (RA. at 453). Detective Kennedy took a written statement from Petitioner. (RA at 453-54). In the written statement, Petitioner also admitted that he hit Ma, but stated that he did so because she pushed him. (RA at 460).

At the conclusion of the evidence, the court charged the jury. (RA. at 608-30). The court specifically charged the jury that the prosecution had the burden of proof beyond a reasonable doubt as to all the elements of the crimes charged. (RA. at 614-17). The court further instructed the jury on the weight to be given to the credibility of the witnesses. (RA. at 611-13). There were no objections to the jury charge. (RA. at 631). The jury found Petitioner guilty of both the attempted rape and the assault

charges. (RA. at 636-37).

After the trial, Petitioner was interviewed for his presentence report.[8] (RA at 647).  At that interview, Petitioner apparently made some statements that were later interpreted by the Public Defender as alleging ineffective assistance of counsel. *Id.* This issue was raised before the trial judge, and he appointed new counsel for Petitioner.  Petitioner's new attorney reviewed the allegations and made a motion to set aside the verdict based upon ineffective assistance of counsel. (RA at 647-48).  The hearing was lengty, and both of Petitioner's attorneys testified.[9]

Petitioner essentially alleged that his second attorney Mr. Welden was ineffective because he did not move to suppress or preclude Shaohua's identification testimony; because he failed properly locate and prepare witnesses; because he did not inform Petitioner of various rights that he had regarding the trial; and because Petitioner was not afforded the chance to have "meaningful" conversation with trial counsel. (RA at 829).  Petitioner asserted that he was prejudiced because Mr. Welden did not have enough time to properly prepare for the trial, and that Mr. Dulin had promised to be "at his side" during the trial, but had not fulfilled that promise. (RA at 829-30).

After a lengthy hearing, the trial judge delivered an oral decision, denying Petitioner's motion. (RA at 833-38).  The trial judge stated that the hearing "really went

---

[8] This information was contained in the transcript of the section 330.30(1) hearing.  Petitioner's new counsel gave the background of the motion prior to calling his witnesses. (RA 647).

[9] During the course of Petitioner's criminal proceedings, he was represented by two different attorneys from the Public Defender's Office.  Petitioner's original attorney, Thomas Dulin, was replaced by John Welden when Mr. Dulin's wife became very ill. (RA at 657).  It also appears from the transcript that Petitioner's had a first trial that ended in a mistrial during the jury selection on October 4, 1999. (RA at 654).  Mr. Welden was appointed on March 13, 2000, and Petitioner's second trial began on March 20, 2000. (RA at 655).

beyond the typical 330 hearing." (RA at 833).  The trial judge also found that Petitioner had made "really spurious allegations, if not downright lies," and stated that it was "too bad that these attorneys had to sit there . . . and let Mr. Barton under oath cast aspersions at not only their integrity, but their legal abilities." (RA at 833).  The judge also stated that the only thing deficient in the hearing was "Mr. Barton's sense of what's true and what's false." (RA at 834).  The judge concluded that "[c]learly, . . . Mr. Barton was well, well represented." (RA at 837).

**2.   Exhaustion and Procedural Default**

Prior to seeking relief in federal court, it is well-settled that a habeas petitioner must exhaust available state remedies or show that there is either an absence of available state remedies or that the remedies are ineffective to protect petitioner's rights. 28 U.S.C. § 2254(b)(1); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994), *cert. denied*, 515 U.S. 1118  (1995).  Additionally, the petitioner's claims must be fairly presented so that the state court has the opportunity to decide any ***federal*** constitutional issues. *Id.*

The petitioner must have presented the substance of his federal claims to the highest available court of the state. *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005) (citations omitted); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054 (1995)(citation omitted).  The petitioner must assert the same legal theory, premising it on essentially the same body of facts. *Id. Matthews v. Keane*, 94 Civ. 2815,1995 U.S. Dist. LEXIS 11120 *26 (S.D.N.Y. Jan. 13, 1995)(citations omitted).  Finally, the petitioner must have utilized the ***proper procedural vehicle*** so

that the state court may pass on the merits of petitioner's claims. *Dean v. Smith*, 753 F.2d 239, 241 (2d Cir. 1985).

After the court determines whether a claim is unexhausted, the court must also determine whether petitioner has any "available procedures" to raise the issue in state court. If petitioner has not exhausted his state court remedies, but no longer has remedies available in state court with regard to these claims they are "deemed" exhausted but are also procedurally defaulted. *St. Helen v. Senkowski*, 374 F.3d 181, 183 (2d Cir. 2004); *Grey v. Hoke*, 933 F.2d 117, 120-121 (2d Cir. 1991)), *cert. denied*, 514 U.S. 1054 (1995).

A state prisoner who has procedurally defaulted on a federal claim in state court is entitled to federal habeas review of that claim only if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), or establish that failure of the court to consider the claim will result in a miscarriage of justice. *Id.* at 748. A miscarriage of justice will have occurred if the constitutional violation has "probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

In Petitioner's appeal to the Appellate Division, he raised three "numbered" issues which correspond to the first three issues raised in this habeas corpus petition. Petitioner's Appellate Brief. The first issue raised in the Appellate Division is identical to the first issue in the habeas corpus petition. However, this issue appears to be a combination of two claims, one claim regarding the jury instruction on identification

and the second claim alleging ineffective assistance of counsel based on counsel's failure to move to suppress the victim's sister's identification.  Petitioner certainly raised ineffective assistance of trial counsel in his section 330.30 motion to vacate.

In his Appellate Division brief, Petitioner also raised the claim that his oral statements should have been suppressed.  He raised this claim based solely upon the prosecutor's alleged failure to provide him "notice" under section 710.30 of the New York Criminal Procedure Law. Petitioner's Appellate Brief at 6.  Finally, in his Appellate Division brief, Petitioner raised his *Sandoval* claim. Petitioner's Appellate Brief at 7-8.

A review of Petitioner's application for leave to appeal to the New York Court of Appeals shows that petitioner only raised "two grounds upon which defendant seeks leave to appeal to the Court of Appeals." Petitioner's Application dated February 10, 2003.  Petitioner raised ***only*** the claim that the trial court erred in failing to give an expanded identification instruction.  Petitioner apparently dropped the second part of that claim, alleging that he was denied effective assistance of counsel.  There is no mention of ineffective assistance of trial counsel in Petitioner's application to the New York Court of Appeals.  Petitioner's letter specifically stated that there were "two grounds" presented for review.

Petitioner also raised the claim that the sister's identification should have been suppressed or precluded due to the prosecutor's failure to give notice under section 710.30.  Appellate counsel argued that the sister's identification was "police-arranged" and therefore, should have been subject to the notice requirement. Petitioner's

Application at 2-3.  Petitioner did ***not*** raise any *Sandoval* claim.

The Second Circuit has specifically held that when the letter to the Court of Appeals does not contain all the arguments raised in the Appellate Division, the petitioner is considered to have abandoned those claims. *Galdamez* 394 F.3d at 74 (citing *Grey v. Hoke*, 933 F.2d at 120).  In this case, because Petitioner failed to raise the ineffective counsel and the *Sandoval*[10] claims in his application to the New York Court of Appeals, he has not exhausted either of those two issues.

The court must then determine whether Petitioner has any available vehicle to raise either of the claims that he has failed to exhaust.  Petitioner cannot return to the Court of Appeals because he has already made the one request to which he is entitled. *See Grey v. Hoke*, 933 F.2d at 120 (citing N.Y. COMP. CODES R. & REGS. tit. 22, § 500.10(a)).  Petitioner also cannot return to the trial court to file a motion to vacate his conviction, because the issues in question were already addressed by the Appellate Division,[11] and the ineffective assistance of counsel issue was already ***thoroughly addressed*** by the trial court in Petitioner's section 330.30 motion.

Since Petitioner cannot return to state court to raise his ineffective assistance of counsel claim, his improper admission of oral statements claim, or his *Sandoval* claim,

_____

[10] The court would also point out that Petitioner's *Sandoval* claim was raised only as a claim based on state law. Petitioner did not raise a federal due process issue in conjunction with this evidentiary claim.  Thus, regardless of whether Petitioner had raised the *Sandoval* issue in his application to the New York Court of Appeals, he would still have failed to exhaust this claim.  Finally, because the *Sandoval* claim is evidentiary in nature, it is generally not cognizable in a federal habeas corpus proceeding absent a showing that the particular errors were of constitutional magnitude. *Shannon v. Senkowski*, 2000 WL 1683448, at *6 (citations omitted). *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)

[11] *See* N.Y. CRIM. PROC. LAW § 440.10(2)(a)(barring review of issues that have already been determined on appeal).

-12-

he is procedurally barred from bringing any of those claims in this habeas petition unless he can show "cause" for the default *and* actual prejudice resulting from the error, or if Petitioner can show that he is "actually innocent." *Murray v. Carrier*, 477 U.S. at 496.

Petitioner in this case cites only one claim that could be interpreted as attempting to argue "cause" for his procedural default. Petitioner brought a petition for writ of error coram nobis in the Appellate Division, arguing that his appellate counsel was ineffective. Constitutionally ineffective counsel would rise to the level of cause for a procedural default. *See Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994)(citation omitted), *cert. denied*, 514 U.S. 1054 (1995). However, Petitioner's claim of ineffective assistance of appellate counsel was directed specifically at counsel's *performance in the Appellate Division*, while his procedural default occurred in his application to the New York Court of Appeals. This court will be considering his ineffective assistance of appellate counsel in the Appellate Division on the merits below.

The Second Circuit has held that a petitioner's right to effective assistance of counsel does not extend to discretionary appeals, particularly when leave to appeal is denied. *See Hernandez v. Greiner*, 414 F.3d 266 (2d Cir. 2005). Thus, Petitioner cannot use ineffective assistance of counsel in the New York Court of Appeals as cause for his procedural default. Because Petitioner cannot show cause for his procedural default, the court need not proceed to consider prejudice. Petitioner has also failed to show that he is "actually innocent" of the crime. Thus, Petitioner's ineffective

assistance of trial counsel claim (part of claim 1); his oral statements claim (claim 2), and his *Sandoval* claim may be dismissed as procedurally defaulted.

**3.**   **Standard of Review**

The standard of review in a habeas action depends upon whether the state court considered petitioner's constitutional claims "on the merits."  The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that a federal court lacks the power to grant a writ of habeas corpus under 28 U.S.C. § 2254 unless the state court ruling ***on the merits*** of a federal constitutional issue was either "'contrary to . . . clearly established Federal law' or 'involved an unreasonable application . . . of clearly established Federal law.'"  *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001)(quoting 28 U.S.C. § 2254(d)(1))(alterations in original).  The statute further provides that the court may grant a writ of habeas corpus when a claim that was considered on the merits by the state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

A state court decision is "contrary to "' clearly established Supreme Court precedent if it either arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law' or if the state court arrives at a result opposite to one reached by the Supreme Court on 'materially indistinguishable facts.'" *DelValle v. Armstrong*, 306 F.3d 1197, 1200 (2d Cir. 2002)(quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to the AEDPA, the court was not required to defer to state court

determinations on pure questions of law and mixed questions of law and fact. *Thompson v. Keohane*, 516 U.S. 99, 107-13 (1995). When presented with these questions, the court was empowered to conduct an independent review of the record. *Id.* The factual findings of the state court, however, were presumed to be correct absent circumstances listed in the statute, such as cases in which the factual finding was not fairly supported by the record. 28 U.S.C. § 2254(d) & (d)(8). The AEDPA requires the court to apply a more deferential standard, placing new restrictions on the power of federal courts to grant writs of habeas corpus to state inmates. *Williams v. Taylor*, 529 U.S. 362, 399 (2000).

In order to apply the AEDPA standard, the petitioner's claim must have been "adjudicated on the merits" in the State court proceedings. 28 U.S.C. § 2254(d)(1). Additionally, the AEDPA provides that a state court's fact findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence. *Id.* § 2254(e)(1). If the State court has failed to adjudicate a claim "on the merits," the pre-AEDPA standard of review applies, and the court reviews both questions of law and mixed questions of law and fact *de novo. Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001).

**4.    Jury Instruction**

Petitioner alleges that the court erred in its instructions to the jury regarding identification testimony in that no "discernable" identification charge was given. Respondent claims Petitioner has failed to state a claim upon which habeas relief may be granted. In denying Petitioner's claim on appeal, the Appellate Division held that

the court "instructed the jury that identity had to be proven beyond a reasonable doubt, thereby making an accurate statement of the law and, thus, no legal error resulted." 752 N.Y.S.2d at 176.   Because the Appellate Division determined this claim on the merits, the AEDPA standard is applicable.

The court must first point out that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).   "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. *Estelle v. McGuire*, 502 U.S. 62 67-68 (1991) (citations omitted).   In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.*

Under the AEDPA, this court must begin by examining Supreme Court precedent on the issue of jury instructions.   Although there may be no specific precedent on expanded "identification" instructions, the Supreme Court has held that a state prisoner claiming that the trial court provided "'improper jury instructions faces a substantial burden.'" *DelValle v. Armstrong*, 306 F.3d 1197, 1200 (2d Cir. 2002)(quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)(quoting *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973)).   The court must determine "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, . . . not merely whether the instruction is undesirable, erroneous, or even 'universally condemned.'" *Id.*

Thus, in order to obtain a writ of habeas corpus in federal court for an error in a state court's jury instructions, a petitioner must "not only show that the instruction

misstated state law but that the error violated a right guaranteed to him by federal law." *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001)(citations omitted).  Furthermore, "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."  *Cupp*, 414 U.S. at 146-47 (citing *Boyd v. United States*, 271 U.S. 104, 107 (1926)).

Here, despite Petitioner's claim that no discernable instruction was provided to the jury by the trial court, the record belies this argument.  The court specifically stated, "[a]s I instructed you, the People have the burden to prove to your satisfaction beyond a reasonable doubt not only essential elements of the crimes charged, but also that this defendant is the person who committed it." (RA. at 625).  The court also described how a jury was to assess and weigh the credibility of the witnesses.  (RA. at 611-13).

New York State courts have held that "a [j]udge who gives a general instruction on weighing witness' credibility and who states that identification must be proven beyond a reasonable doubt has made an accurate statement of the law.  No cognizable prejudice accrues to any party."  *People v. Whalen*, 451 N.E.2d 212, 214 (N.Y. Ct. of App. 1983); *see also People v. Knight*, 662 N.E.2d 256, 257 (N.Y. Ct. of App. 1995); *People v. Golden*, 804 N.Y.S.2d 496, 498 (N.Y. App. Div. 3d Dep't 2005); *People v. Torres*, 779 N.Y.S.2d 34, 35 (N.Y. App. Div. 1st Dep't 2004); *People v. Gomez*, 764 N.Y.S.2d 109, 110 (N.Y. App. Div. 2d Dep't 2003); *People v. Singleton*, 730 N.Y.S.2d 650, 651 (N.Y. App. Div. 4th Dep't 2001).

In *Lopez v. Fischer*, 05 Civ. 2558, 2006 U.S. Dist. LEXIS 75371, *26-29 (S.D.N.Y. Oct. 12, 2006), the court reviewed a similar claim.  The court held that as

long as the trial court gave instructions connecting the identification issue to the prosecution's burden of proof beyond a reasonable doubt and properly instructed the jury on the evaluation of witness credibility, the trial court did not violate state law, nor did the court violate the petitioner's federal constitutional rights. *Id.*  In this case, the trial court did not misstate New York law in the identification charge.  Viewed in the context of the overall charge, the trial court did not commit any error during jury instructions that violated due process.  Accordingly, the Appellate Division's determination was not contrary to, nor did it involve an unreasonable application of, clearly established federal law, and this Court recommends that Petitioner's jury instruction claim be denied and dismissed.

**5.**   **Evidentiary Issue**

It is unclear whether as part of his first claim, Petitioner is attempting to argue that the court improperly admitted identification testimony by the victim's sister. Although he seems to mix the claim with his claim of ineffective counsel, he states that the identification was "clearly impermissible."  Petitioner did raise this claim in the Appellate Division, and the court considered the claim on the merits, and Petitioner did include this claim in his application for leave to appeal to the New York Court of Appeals.

The basis for this claim is that the prosecution failed to give Petitioner ***notice*** pursuant to N.Y. CRIM. PROC. LAW § 710.30 that the identification testimony would be used at trial.  The court does note that although Petitioner bases the argument on this state law section, the essence of the argument is that the state law notice requirement

applied because the identification was "police-initiated" and suggestive, and therefore, Petitioner should have been notified of the potential testimony so that he could have moved to suppress it. Respondent argues that this is purely a state law question that is not cognizable in an application for habeas corpus. Since Petitioner did exhaust this claim, the court will consider the merits.

Generally, claimed errors in evidentiary rulings and other state law errors are not cognizable in a federal habeas proceeding. *Estelle*, 502 U.S. at 72-75 (citation omitted). These errors are not subject to *habeas* review **unless** they deprive a defendant of a fundamentally fair trial. *Id.* A party is entitled to *habeas* relief on a claim that evidence was improperly admitted against him only where the introduction of that evidence "so infused the trial with unfairness as to deny [the defendant] due process of law." *Lisenba v. California*, 314 U.S. 219, 228 (1941).

The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence "is so extremely unfair that its admission violates fundamental conceptions of justice." *Dowling v. United States*, 493 U.S. 342, 352 (1990)(quotation marks and citations omitted). As the *Dowling* Court noted, only a very narrow class of evidentiary infractions violates fundamental fairness. *Dowling*, 493 U.S. at 352.

First, the admission of the evidence must have been erroneous under state law. *See Osorio v. Conway*, 05 Civ. 473, 2007 U.S. Dist.LEXIS 51926, *26 (S.D.N.Y. July 17, 2007)(citations omitted)(the petitioner must first prove that the state court's decision violated a state evidentiary rule, because the proper application of a

presumptively constitutional evidentiary rule could not be unconstitutional). Second, for the *erroneous* admission of unfairly prejudicial evidence to amount to a denial of due process, the evidence must have been "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (citing *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985)). In assessing materiality, courts are to review the erroneously admitted evidence "in light of the entire record before the jury." *Collins*, 755 F.2d at 19. Thus, a *habeas* petition may be granted on such a claim challenging a state-court evidentiary ruling "*only* where petitioner can show that the error deprived [him] of a *fundamentally fair* trial." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) (emphasis in original) (citations omitted). In this case, Petitioner cannot get past the first step of the above analysis.

Petitioner makes a state law evidentiary argument regarding the victim's sister's identification testimony. Petitioner claims that he did not receive notice pursuant to section 710.30 that the prosecutor was going to use the victim's sister's identification of Petitioner. The Appellate Division held that section 710.30 did not apply to the victim's sister's testimony because the sister's observations were not "police initiated." 752 N.Y.S.2d at 176. Once again, although the Appellate Division decided this issue on the merits, the decision was purely a state law evidentiary ruling. Thus, this court must first decide whether the evidentiary ruling was erroneous in the first instance.

The statute states that the notice requirement applies to the identification of defendant by a witness who has previously identified him. N.Y. CRIM. PROC. LAW

§ 710.30(1)(b).  Although the statute is not specific regarding the type of identification to which this applies, New York law is clear that the notice requirement applies only to "**police-initiated**" identification. *See People v. Butler*, 16 A.D.2d 915, 916-17, 791 N.Y.S.2d 723, 725 (3d Dep't 2005); *People v. Rufin*, 237 A.D.2d 866, 867, 655 N.Y.S.2d 672, 673-74 (3d Dep't 1997).

In this case, Shaohua's identification of Petitioner was discussed at the suppression hearings as well as at the trial, and it was clear that Shaohua had discussed Petitioner's description with Shaoying and had seen the attacker before in the restaurant.  It was also clear that when Shaohua saw Petitioner walk by the restaurant, it was Shaoli who called the police to tell them that Shaohua had seen Petitioner. (RA at 71, 85-86)(suppression hearing). Finally, it was also clear that when the police arrived, it was Shaohua who took them to Sadie Klutz's bar and pointed out Petitioner as the attacker. (RA at 104)(suppression hearing).  The officer merely went inside the bar and asked Petitioner to come out.  There is absolutely *no* evidence that the identification was "police-initiated" and thus, the notice requirement did not apply.[12]  Thus, there was no evidentiary error, and the court need not proceed to the second step of the constitutional analysis.

---

[12] During the trial court's decision on the preclusion/suppression issues, the court read the prosecutor's form section 710.30 notice. (RA at 141-42).  The form specifically states that it is a "notice of intent to offer certain evidence by the People . . . ." (RA at 141).  The judge read the following statement from the form:

One of the boxes is identification of defendant who committed the crime herein charged by a witness who ha previously identified the defendant as such by , and then ther are further boxes for an on-scene show up, another box for line-up, another box for photographs.

(RA at 141-42).  It is apparent even from the prosecutor's form that the only times that the notice is relevant is when there is one of the three types of police-initiated identification procedure.

The court notes that the trial judge did preclude the identifications of both the victim and a neighbor because the prosecutor did not give proper notice on the form that was used. (RA at 142).  The court held that the fact that the prosecutor had turned over separate documents indicating that there had been two police-initiated identifications was insufficient to alert defendant to the prosecutor's intent to use the identification testimony. (RA at 142-43).  The court then stated "[a]ccordingly I am precluding the district attorney from using the identification testimony of the victim and/or the neighbor, *one of whom identified the defendant through photos and the other on the basis of an on-scene show up.*" (RA at 143)(emphasis added).

Thus, the Appellate Division's decision that the section 710.30 notice was not required was not error, nor was it contrary to or unreasonably apply Supreme Court precedent.

**6.    Ineffective Assistance of Appellate Counsel**

Petitioner's final claim is that his appellate counsel was ineffective for failing to "clarify constitutional violation[s] involved in the defendant[']s case" as well as for failing to raise an ineffective assistance of trial counsel claim based on a failure to properly prepare for trial.  (*See* Pet. at ¶ Ground Four).  Petitioner moved for a writ of error *coram nobis* in the Appellate Division which is the proper vehicle for challenging the ineffective assistance of appellate counsel.  *See People v. Bachert*, 509 N.E.2d 318 (N.Y. Ct. of App. 1987)(writ of error coram nobis is the proper vehicle to challenge the effectiveness of appellate counsel in state court).

In this case, the Appellate Division denied Petitioner's application without

-22-

opinion, and thus, is considered to have decided the application "on the merits." *See Sellan v. Kuhlman*, 261 F.3d 303, 314 (2d Cir. 2001)(denial of claim is "on the merits" when there no explanation for the decision and no basis for believing that the decision was rejected on procedural grounds). Therefore, the AEDPA standard applies to this court's review of Petitioner's appellate counsel claim.

The Due Process clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Claims of ineffective assistance of appellate counsel are analyzed under the well-established Supreme Court standard set forth in *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Petitioner must show that counsel's representation 'fell below an objective standard of reasonableness' judged by 'prevailing professional norms.' *Id. See also Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998). Petitioner must then show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Strickland,* 466 U.S. at 694. In applying this test, a reviewing court must be "highly deferential" and presume that counsel's conduct falls within the range of reasonable performance. *Strickland*, 466 U.S. at 689. Tactical decisions made after thorough investigation are "virtually unchallengeable." *Id.* at 690.

The law is clear that when preparing an appeal, an attorney is not required to raise every non-frivolous argument even if asked to do so by his or her client. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). In *Jones*, the Court stated that "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing

out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id*. at 751-52.

In this case, Petitioner claims that appellate counsel did not "clarify" constitutional violations that occurred.  However, Petitioner does not specify what constitutional violations he believes counsel should have raised differently on appeal. Petitioner has failed to establish that appellate counsel omitted any significant issues in favor of weaker arguments.

Petitioner does claim that appellate counsel failed to raise ineffective assistance of trial counsel based on counsel's alleged failure to prepare for trial.  The court would first point out that appellate counsel did make reference to trial counsel's failure to move to suppress the sister's identification. Petitioner's Appellate Brief at 3-5. Appellate counsel specifically argued that trial counsel had "virtually no time to prepare" based upon the first counsel's withdrawal from the case only days prior to the trial. *Id.* at p.5.  Based upon the trial court's finding at the Petitioner's section 330.30 hearing, it would have been difficult for appellate counsel to argue ineffective assistance of counsel more strenuously.

A review of the trial record shows that counsel conducted the trial properly, cross-examined the prosecution's witnesses effectively, and presented Petitioner's alibi defense.  The evidence does not establish that trial counsel's representation fell below an objective standard of reasonableness.  Because trial counsel's conduct did not "so undermine the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result," appellate counsel properly declined to make

-24-

additional arguments on appeal regarding trial counsel's ineffectiveness.  On the whole, appellate counsel's representation on appeal was not outside the wide range of professionally competent assistance, was not objectively unreasonable, nor was Petitioner prejudiced by counsel's representation.  Petitioner's final claim may, therefore, be dismissed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is further

**ORDERED**, that the Clerk shall serve Petitioner at ***both*** his Coxsackie Correctional Facility address as listed on the docket sheet of this action ***and*** his Mt. McGregor address as listed on the first page of this Order and Report-Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Dated: August 6, 2007

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge